October 27, 2021

**Supreme Court**

No. 2019-360-Appeal.
(N 18-5118)

In re Domenic B.         :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Domenic B.         :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Lynch Prata, for the Court.**  This case came before the Supreme Court on September 29, 2021, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  The respondent mother, Taressa B., appeals *pro se* from a decree entered in the Family Court terminating her parental rights to her son, Domenic B.[1]  After hearing the parties' arguments and thoroughly reviewing the record, we are satisfied

---

[1] Although the respondent appears before us *pro se*, this Court appointed two separate attorneys to represent her for purposes of this appeal.  However, both attorneys moved to withdraw their appearances, citing conflicts of interest due to differing opinions as to how the appeal should proceed, as well as a breakdown in communication.  This Court granted both attorneys' motions to withdraw and ordered that the matter shall proceed with the respondent appearing *pro se*.

At oral argument, the respondent requested that this Court appoint a third attorney to assist her with the present appeal.  We conclude that the respondent has repeatedly refused to accept the services of competent court-appointed counsel, and we therefore decline her request.

that cause has not been shown. For the reasons set forth in this opinion, we affirm the decree of the Family Court.

**Facts and Travel**

Domenic was born on July 25, 2017. The respondent was seventeen years old when Domenic was born. Two days after Domenic's birth, an investigator from the Department of Children, Youth, and Families visited respondent at the hospital upon learning that respondent planned to live with her stepfather, Domenic Annotti (Annotti). Taressa testified at the proceedings in the Family Court that she had lived with Annotti since she was six months old.

Taressa and Domenic had been brought to the attention of DCYF through an open DCYF investigation concerning Taressa's biological mother, Malinda. Malinda and Annotti had separated in 2014, and Malinda did not live with Annotti at the time of Domenic's birth. However, Malinda had also recently given birth, and DCYF was investigating allegations of neglect as to that child. During the investigation, Malinda disclosed to DCYF that her seventeen-year-old daughter, Taressa, had just delivered a baby and planned to live with Annotti.

Annotti had been red-flagged by DCYF as having a history of physical or sexual abuse against a child. Specifically, Annotti was convicted of second-degree child molestation in 1997, and DCYF had issued multiple indications for other incidents of sexual abuse. The DCYF investigator therefore informed Taressa that

Annotti could not be around her newborn son and that she would need to live elsewhere. Taressa agreed to go live with her mother; and, on the evening of July 27, 2017, DCYF confirmed that to be the case. At that time, the DCYF investigator again reminded Taressa that Annotti could not have contact with her son and that, if Taressa allowed such contact to occur, Domenic would be removed and placed into the custody of DCYF.

Despite this warning, on August 10, 2017, a DCYF investigator—accompanied by police—responded to Annotti's Portsmouth, Rhode Island home and discovered that Taressa and Domenic were living in the home. Domenic was removed from Taressa's care; DCYF took custody of Domenic and placed him in nonrelative care. Thereafter, Taressa met with a DCYF social caseworker on numerous occasions to discuss Annotti's prior charges of sexual abuse and molestation, as well as to discuss visitation, counseling, and a reunification case plan with respect to Domenic. DCYF developed a case plan that provided for supervised visitation and indicated that Taressa would be responsible for engaging "in mental health services to address concerns with [her] ability to provide a safe environment for" Domenic. The ultimate goal was to reunify Domenic with Taressa, but DCYF made clear to Taressa that reunification would not be possible if she continued to reside in Annotti's home. Taressa continued to reside with Annotti, was unwilling

to consider alternate living arrangements despite the safety concerns raised by DCYF, and refused to attend counseling.

A second case plan was developed in April 2018, with the continuing primary goal of reunification. DCYF representatives continued to periodically speak with Taressa to review the case plan and barriers to reunification; however, Taressa continued to reside with Annotti and to refuse to participate in counseling. However, Taressa did faithfully participate in the Boys Town family visitation program, and she attended weekly supervised visits with Domenic. She never missed a visit and always arrived on time; she was engaged during the visits and interacted with Domenic in a positive way; and Domenic appeared to be happy during the visits. Although Taressa earnestly participated in her supervised visits with Domenic, DCYF discovered through a photograph posted on social media that Annotti was present during a supervised visit in or about July 2018, and he was photographed holding Domenic. It was not disputed that Taressa knew that she was prohibited from having Domenic in the presence of Annotti.

Eventually Taressa requested to go forward with a probable-cause hearing, which took place in the Family Court over various dates in July and August 2018. On August 10, 2018, the Family Court found that Taressa had not demonstrated an ability to protect Domenic and that there was probable cause to allow DCYF to continue the detention of Domenic. In October 2018 DCYF notified Taressa that

the department would be filing a petition to terminate her parental rights to Domenic. DCYF alleged in its petition that Domenic had been in the legal custody or care of DCYF for at least twelve months, Taressa was offered or received services to correct the situation that led to the child's placement, and there was not a substantial probability that he could return safely to Taressa's care within a reasonable period of time. *See* G.L. 1956 § 15-7-7(a)(3).

A trial on DCYF's petition was conducted in the Family Court on May 28 and 30, 2019, and June 3 and 13, 2019.[2] In addition to receiving documentary evidence, the trial justice heard testimony from the DCYF caseworker assigned to Domenic's case, respondent, respondent's mother, Annotti's son, and a family friend of Annotti's. After hearing closing arguments, the trial justice delivered an oral pronouncement on June 13, 2019, terminating respondent's parental rights to Domenic. In so doing, and after thoroughly reviewing the testimony and relevant trial exhibits, the trial justice found that respondent had "made little, if any, progress" on the tasks set forth in the case plans. He noted that respondent "wants her child with her and she wants to continue living with Mr. Annotti."

The trial justice found by clear and convincing evidence that "it is in the best interest of * * * Domenic * * * that the parental right of [respondent] * * * be

---

[2] The petition was also filed as to Domenic's father, who was defaulted on January 29, 2019. A decree terminating the father's parental rights was entered on August 27, 2019.

terminated." The trial justice determined that the testimony of the DCYF caseworker was "clear, convincing, compelling and weighty[,]" and that respondent had not followed recommendations from DCYF for counseling, financial stability, full-time employment, and housing. He found by clear and convincing evidence that it was "not probable that [Domenic] shall be able to be returned to [respondent] safely within the foreseeable future" given his age and need for permanency. The trial justice went on to find that Domenic had been in DCYF care since his removal shortly after birth and was in what could be a pre-adoptive home and had bonded to that family. The trial justice concluded that respondent was unfit to parent Domenic and that it was in the child's best interest that respondent's parental rights be terminated.

The decree terminating respondent's parental rights was entered on July 2, 2019. The respondent timely appealed.

**Standard of Review**

"On appeal, this Court reviews termination of parental rights rulings by examining the record to establish whether the Family Court justice's findings are supported by legal and competent evidence." *In re Elana W.*, 249 A.3d 287, 292 (R.I. 2021) (quoting *In re Violet G.*, 212 A.3d 160, 166 (R.I. 2019)). The findings of the Family Court "are entitled to great weight, and this Court will not disturb them unless they are clearly wrong or the trial justice overlooked or misconceived material

evidence." *In re Manuel P.*, 252 A.3d 1211, 1218-19 (R.I. 2021) (quoting *In re Rylee A.*, 233 A.3d 1040, 1049 (R.I. 2020)).

## Discussion

On appeal, respondent maintains that the trial justice erred in finding (1) that she needed to follow DCYF's case plans; (2) that she was unfit to parent Domenic; and (3) that Annotti was properly red-flagged by DCYF. The respondent also maintains that the trial justice rendered his decision too quickly, and thus, she contends, he did not adequately consider and review the evidence. Lastly, respondent avers that the Family Court violated her constitutional rights because, she contends, there were no exigent circumstances that allowed DCYF to remove her son from her care.

"Before terminating a parent's rights to his or her child, the Family Court justice must find that the parent is unfit" by clear and convincing evidence. *In re Elana W.*, 249 A.3d at 293 (quoting *In re Violet G.*, 212 A.3d at 166). Once a determination of parental unfitness has been made, "the best interests of the child outweigh all other considerations." *Id.* (quoting *In re Violet G.*, 212 A.3d at 166).

Here, the trial justice found by clear and convincing evidence that respondent was unfit to parent Domenic and that DCYF had made reasonable efforts to reunify respondent with her son. The respondent admitted before the Family Court that two reunification case plans were developed for her; and, despite DCYF's efforts,

- 7 -

respondent did not comply with the case plans. The first case plan, dated September 5, 2017, was signed by respondent and stated that respondent understood that she had "an obligation to comply with the services set forth in this plan." The respondent refused to sign the second case plan, dated April 11, 2018. Both case plans provided that respondent would address three main areas of concern—development of her ability to keep Domenic safe at all times, her mental health, and her economic self-sufficiency.

The record reveals that, in an attempt to help respondent with successfully achieving these goals, DCYF made numerous referrals and set up services to assist respondent with parenting, counseling, financial stability, and housing. The DCYF caseworker and/or the Boys Town caseworker met with respondent "every other month" to review the case plan. At these meetings, respondent was consistently told that she needed to engage in counseling. The DCYF caseworker testified before the Family Court that she and respondent "talked a lot about the Women's Resource Center in Warren because it's close and in her area." At one point, respondent indicated to the caseworker that she would call a provider and engage in counseling, but respondent "then did not[,]" according to the caseworker. She was also offered assistance with obtaining alternate housing, including applying for rental assistance or increasing her employment in order to afford housing.

Although we commend respondent's faithful participation in the Boys Town family visitation program, we agree with and discern no error in the trial justice's finding that respondent was completely unwilling to attend counseling or move out of Annotti's house. The record demonstrates that respondent rejected concerns from DCYF and other providers that she needed to engage in mental-health counseling and leave Annotti's home. On numerous occasions, respondent was informed that her unwillingness to comply with the case plans prevented her from achieving the objectives necessary to be reunified with Domenic.

The respondent obstinately maintained—up to and during trial—that she "did not need" counseling and "wasn't going to do it[.]" She refused services from DCYF to help her locate housing apart from Annotti, and she remained residing in his home from the time Domenic was removed from her care.[3] There is no evidence that respondent recognized the risk to Domenic of living in a home with a convicted sex offender, or that she had any ability whatsoever to ensure the safety of Domenic.[4]

---

[3] At oral argument before this Court, respondent revealed that she currently resides in Annotti's home and has not engaged in any counseling; she also told this Court that she does not need counseling.

[4] Although respondent argues that Annotti "has no convictions of child abuse[,]" our review of the record reveals quite the opposite. In 1998, Annotti pled nolo contendere to second-degree child molestation. In addition, in 2014 he was charged with numerous counts of first- and second-degree child molestation. Annotti pled nolo contendere in 2016 to an amended charge of two counts of felony assault, and the remaining charges were dismissed by the state. He was sentenced to two concurrent terms of ten years in prison, suspended, with probation.

We are satisfied that there is sufficient evidence in the record to support the trial justice's finding that respondent was unfit given her failure to fully engage in the services provided by DCYF and lack of protective capacity. *See In re Elana W.*, 249 A.3d at 294 ("This Court has said that the 'refusal to cooperate with the objectives of the case plans constitutes clear and convincing evidence of a lack of interest in the child and, as such, could properly serve as a basis for a finding of parental unfitness.'") (brackets omitted) (quoting *In re James H.*, 181 A.3d 19, 27 (R.I. 2018)).

We now turn to the "'issue of the best interests of the child,' which outweighs all other considerations." *In re Elana W.*, 249 A.3d at 294 (quoting *In re Violet G.*, 212 A.3d at 167). The trial justice found that Domenic had been in DCYF care "since shortly after his birth[,]" was in what would be a pre-adoptive home if he was freed for adoption, and had established a familial connection in his foster home. The record reveals that, as of the time of the trial in the Family Court, Domenic had resided in nonrelative foster care for almost two years, that he was growing and reaching all developmental milestones, and that he had bonded with his foster family. We are satisfied that the trial justice appropriately determined that the termination of respondent's parental rights was in the best interest of Domenic in

order to provide him with the opportunity to have "a safe and nurturing environment in which to live, learn and grow." *In re Alexis L.*, 972 A.2d 159, 170 (R.I. 2009).[5]

Although we conclude that the trial justice's decision to terminate the respondent's parental rights was proper, we pause to observe the disservice done by DCYF relative to the respondent in this case. DCYF is a statutorily created department within the executive branch and is charged with, *inter alia*, "providing for * * * [a] permanent home and safe environment for children[.]" General Laws 1956 § 42-72-2(2)(ii); § 42-72-1(a) (establishing DCYF as a department within the executive branch of state government). Here, DCYF completely failed the respondent as a minor. DCYF was well aware of Annotti's numerous indications of child molestation and had him red-flagged in its database.[6] However, DCYF failed to intervene on behalf of the respondent to protect her. In 2016, the respondent's mother informed a DCYF caseworker that the respondent, who at the time was a

---

[5] Because we have determined that respondent's arguments on the other issues she raises are wholly without merit or were not properly raised below, we need not address them on appeal.

[6] In addition to the aforesaid charges and convictions, the record reveals that in 1997 DCYF investigated additional allegations of child sexual abuse against Annotti. Apparently, Annotti—when he was twenty years old—impregnated a sixteen-year-old minor. It was reported to DCYF that, at the hospital where the minor gave birth, Annotti was "hysterical[,] * * * refused to allow a male doctor to examine" the minor, "stayed in bed with [the minor] since she was admitted[,]" would "not leave the room for any reason," and refused "to allow anyone but himself to view or clean [the minor's] private area following delivery or after." Annotti "was not happy when [the] 16 year old * * * was told she could not have sex for 6 weeks."

minor, had unsupervised contact with Annotti. Although the respondent not only had unsupervised contact with a convicted child molester, but also was actually living with him, the record is devoid of any evidence that DCYF attempted to remove the respondent from Annotti's home. As the respondent testified, she had lived with Annotti since she was six months old, and DCYF never removed her from his home. In our opinion, DCYF certainly did not zealously advocate on behalf of the respondent and provide her with a safe environment. *See* § 42-72-2(2)(ii). This, however, does not negate the fact that, with respect to Domenic, the respondent has flatly refused to prevent a known sex offender from having contact with her own child.

## Conclusion

For the reasons set forth in this opinion, we affirm the decree of the Family Court. The record in this case may be returned to the Family Court.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | In re Domenic B. |
| **Case Number** | No. 2019-360-Appeal.<br>(N 18-5118) |
| **Date Opinion Filed** | October 27, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Stephen J. Capineri |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Benjamin Copple<br>Department of Children, Youth and Families<br><br>Andrew J. Johnson<br>Court Appointed Special Advocate |
| | For Respondent:<br><br>Taressa Lynn Brownell, Pro Se |